UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Jesus Cardona, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § § | Civil Action No. 4:25-cv-01582 |
| Maritime Association – I.L.A. Retirement Plan, et al., | § § § § | |
| *Defendants.* | § § § | |

## MEMORANDUM AND RECOMMENDATION

This is a suit for benefits under the Employee Retirement Income Security Act (ERISA). Maritime Association – I.L.A. Retirement Plan (the "Plan"), its Board of Trustees (the "Board"), its Administrator Linda Nowaski, and its legal counsel Carolyn Wallace (collectively, "Defendants"), moved to dismiss Plaintiff Jesus Cardona's first amended complaint, Dkt. 12. Dkt. 14. After carefully considering the motion, Cardona's response, Dkt. 15, the pleading, Cardona's opening brief, Dkt. 30, and the applicable law, it is recommended that the motion to dismiss (Dkt. 14) be granted.

## Background

The relevant facts are drawn from the pleadings and the records of related cases that are proper subjects of judicial notice. *See Canada v. United*

*States*, 950 F.3d 299, 313 n.16 (5th Cir. 2020) (taking judicial notice "of the record in prior related proceedings"); Fed. R. Evid. 201(b)(2), (d) (authorizing judicial notice "at any stage of the proceeding" of facts "not subject to reasonable dispute" that are "readily determined from sources whose accuracy cannot reasonably be questioned").

Cardona is a Plan participant. Dkt. 12 at 1. On October 5, 2023, he and his wife, Damary Carolina Torres Murillo, executed a written agreement partitioning their community property under Section 4.102 of the Texas Family Code in which Cardona allocated 100% of his Plan benefits to Murillo. *See* Original Petition for Declaratory Judgment at 2, Cause No. 125217, *In re Jesus Cardona and Damary Carolina Torres Murillo* (461st Jud. Dist. Ct., Brazoria Cnty., Tex. Oct. 6, 2023) ("Petition," attached in the Appendix).

The next day, Cardona and Murillo filed a petition for declaratory judgment in the 461st Judicial District Court of Brazoria County. *Id.* The Petition asked the state court to "recognize[]" that Cardona and Murillo "entered into a binding and enforceable petition of community property in accordance with the Texas Family Code" and Murillos's right to receive 100% of Cardona's Plan benefits. *Id.* at 2-3.

It is undisputed that Cardona and Murillo had not legally separated, nor had they filed for divorce, before seeking a declaration that the partition agreement is enforceable. *See id.* at 1. Nor did the couple have any other

2

ongoing or imminent legal dispute between them that prompted the filing. *See id.*; *see also* Dkt. 15 at 2 (Cardona's admission that "[b]oth spouses consented to the QDRO. There was no dispute or challenge"). Nevertheless, the state court issued an "Agreed Qualified Domestic Relations Order" (the "Order") that "assigns to [Murillo] One Hundred Percent (100%)" of Cardona's "total vested account balance in the Plan as of the Valuation Date," *i.e.*, the "date the assigned amount is segregated by the Plan Administrator from" Cardona's account. *See* Dkt. 12 at 13-14 (PX-A).

Under the Order, Murillo's interest "shall be payable as soon as administratively feasible following the qualification of the Order." *Id.* at 14. The Order declares that it is "based upon a valid and enforceable written Partition of Community Property executed by" Cardona and Murillo "pursuant to Section 4.102 of the Texas Family Code," which the court "hereby approve[s] ...." *Id.* at 13. The Order also declares that the issuing state court retains "continuing, exclusive jurisdiction over the parties pursuant to Section 9.104 of the Texas Family Code to the extent necessary to render a domestic relations order that is qualified" in the event the Plan Administer determines that the Order is not qualified. *Id.* at 17.

Cardona submitted the Order to the Plan, requesting a distribution of his account balance to Murillo. *Id.* at 2. Cardona alleges that the Order was

3

materially identical to 29 other qualified domestic relations orders that were previously submitted to and approved by the Plan. *Id.*

The Plan's legal counsel (Wallace) sent a letter denying Cardona's request. *Id.* at 3, 18-19 (PX-B, October 1, 2024 denial letter). Citing *In re Banigan*, 660 S.W.3d 307 (Tex. App.—Dallas 2023, orig. proceeding), the letter stated that the Plan would not honor the Order because there was "no jurisdictional or legal basis" to enter it "in the absence of a bona fide domestic relations dispute." *Id.* at 19. The Plan therefore maintained that the Order did not constitute a qualified domestic relations order ("QDRO") under Texas law or ERISA. *Id.*

The Plan Administrator hewed to that position in an ensuing letter denying Cardona's claim for benefits. *See id.* at 21 (PX-C, January 7, 2025 letter). So did the Board of Trustees in its final claim determination. *See id.* at 34-35. (PX-E, March 10, 2025 letter). The final letter also addressed Cardona's contention that the denial was inconsistent with the Plan's approval of "29 prior QDROs," *see id.* at 33 (quotation omitted), explaining as follows:

> When the Plan has reviewed purported QDROs and recognized that they are not the product of a bona fide domestic relations dispute and only supported by an agreed upon partition or exchange agreement, it has refused to process the QDROs. If it is the case that the Plan has inadvertently processed improper QDROs in the past based on vague, incomplete, or misleading information contained in those distribution submissions, this does not support improper processing of your claim or other claims.

4

*Id.* at 34.

On April 7, 2025, Cardona filed this suit, alleging that Defendants (1) violated Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), by treating his Order differently from other QDROs; (2) breached their fiduciary duty as a result; (3) engaged in arbitrary and capricious conduct; and (4) failed to disclose plan documents related to the processing of the 29 other QDROs that the Plan had approved. Dkt. 1 at 4-5. The factual allegations focus on the Plan's change of position on the validity of QDROs. *See generally id.* at 3-4. After Defendants filed a motion to dismiss, Dkt. 5, Cardona moved for leave to amend, Dkt. 9, which the Court granted, Dkt. 11.

Cardona then filed a first amended complaint centering around the theory that the Plan had improperly "bypassed" the Order's explicit terms. *See generally* Dkt. 12 at 3-4. His pleading carried forward the original four ERISA claims but added a claim that Defendants violated 29 U.S.C. § 1056(d)(3)(H) by failing to return to the state district court to seek clarification of the Order. *See* Dkt. 12 at 5-8. Defendants moved to dismiss all five claims, Dkt. 14, and Cardona responded, Dkt. 15 (filed June 20, 2025).

Five months later, Cardona filed a "supplemental memorandum" opposing Defendants' motion to dismiss. Dkt. 26. The Court struck the filing, finding "no good cause for allowing yet more briefing on those issues five months after all briefing has closed." Dkt. 27. Two months after that, Cardona

filed an opening brief that largely addressed the same issues that the parties had already briefed in connection with the motion to dismiss his claims, but also purported to raise new claims not included in his amended complaint. *See generally* Dkt. 30.

## Legal standard

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the

6

plaintiffs."   *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

### Analysis

Defendants contend that Cardona attempted to circumvent ERISA's anti-assignment restrictions by using a flawed family court order to manufacture a benefits payout to his spouse, even though their marital status remains unchanged.  As explained below, Defendants are correct that the Order was void because the state court lacked jurisdiction to enter it.  Defendants did not abuse their discretion in denying Cardona's claim for benefits, nor has Cardona stated any other valid claim under ERISA.  This suit should be dismissed.

## I.   Cardona has not plausibly alleged that Defendants violated ERISA by wrongfully denying benefits.

As his first claim (Count I), Cardona alleged that Defendants violated 29 U.S.C. § 1132(a)(1)(B) by wrongfully denying benefits that should have been paid to his spouse under the Order.  Dkt. 12 at 5.  Cardona also raised an interrelated contention (under "Count III"), which he later explained is not a "standalone" cause of action, but instead articulates the standard of review for the denial of benefits in this case.  *See* Dkt. 15 at 16.  In particular, Cardona alleges that Defendants acted arbitrarily and capriciously both by refusing to recognize the Order despite honoring "29 prior materially identical QDROs" and failing to seek clarification from the state court when determining the

Order's validity. *See* Dkt. 12 at 6-7. The second of those contentions dovetails with Cardona's Count V, which likewise posits that the Order required Defendants to seek the state court's input when determining if the Order was valid. *See id.* at 8.

In their motion to dismiss, Defendants argue that they properly refused to honor Cardona's Order. According to Defendants, the Order was not a qualified domestic relations order under ERISA because the issuing state court lacked subject matter jurisdiction to enter it. Dkt. 14 at 14-16. In addition, Defendants maintain that the Order did not require them to seek the state court's input when determining whether the Order satisfied ERISA's requirements for qualified domestic relations orders. Dkt. 14 at 22-24. They also assert that ERISA did not require the Plan to honor the Order just because it may have mistakenly approved similar ones in the past. *Id.* at 18.

Cardona responds that his Order is a "valid court order entered under the Texas Family Code and ERISA § 1056(d)(3)," and that Defendants acted arbitrarily and capriciously in refusing to honor it. Dkt. 15 at 2, 16. Cardona emphasizes that the same attorney who represented him and his wife in the state-court proceeding "prepared 29 previously approved QDROs for this same Plan," which the Plan had accepted "without objection ...." *Id.* at 4. He also contends that the Order itself "require[s] the Plan to return to [state] court if any qualification issue arises ..." *Id.* at 9.

**A.    Defendants' interpretation of Plan terms is reviewed for abuse of discretion, but their legal determinations are reviewed *de novo*.**

Section 1132(a)(1)(B) allows a participant or beneficiary to sue "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). A denial of benefits challenged under § 1132(a)(1)(B) is reviewed under a *de novo* standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, the Plan vests the Board with such discretionary authority, allowing it to "make benefits eligibility determinations" and to "interpret Plan rules, regulations, and provisions." *See* Dkt. 14-1 at 45. The Board also has discretion to delegate plan management or administration responsibilities to other parties, *see id.* at 45, 47, and has delegated such to Nowaski. Dkt. 14 at 7.

"When a plan gives such discretion, a district court will overrule the plan administrator's interpretation of plan terms only if the interpretation is 'arbitrary and capricious.'" *Matassarin v. Lynch*, 174 F.3d 549, 563 (5th Cir. 1999) (citing *Firestone Tire*, 489 U.S. at 115). An administrator's interpretation of a plan or determination of eligibility for benefits is arbitrary and capricious only if it is "made without a rational connection between the

9

known facts and the decision" or is not "supported by substantial evidence." *Conn. Gen. Life. Ins. Co. v. Humble Surgical Hosp., LLC*, 878 F.3d 478, 483 (5th Cir. 2017).

"However, the court affords no such deference to the Administrator's interpretation of controlling law and statutory interpretation." *Brown v. Cont'l Airlines, Inc.*, 2009 WL 3365911, at *2 (S.D. Tex. Oct. 19, 2009) (citing *Penn v. Howe-Baker Engineers, Inc.*, 898 F.2d 1096, 1100 (5th Cir. 1990)), *aff'd* 647 F.3d 221 (5th Cir. 2011). "The interpretation of ERISA itself must be made de novo by the court." *Penn*, 898 F.2d at 1100.

### B.    ERISA's anti-alienation provision and its limited exception for qualified domestic relations orders.

ERISA's anti-alienation restrictions are central to this dispute. As a starting point, ERISA generally prohibits the assignment of retirement benefits. 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated"). This restriction "bespeak[s] a pension law protective policy of special intensity: Retirement funds shall remain inviolate until retirement." *Boggs v. Boggs*, 520 U.S. 833, 851 (1997) (quotation omitted).

Congress created an exception to the anti-alienation provision when passing the Retirement Equity Act (REA) of 1984, Pub. L. No. 98-397, 98 Stat. 1426, which sought to ensure that private retirement-income systems would

10

provide fair treatment for women. *See Boggs*, 486 U.S. at 843. In particular, ERISA's prohibition on alienation and assignment of pension benefits does not apply to an order determined to be a "qualified domestic relations order." 29 U.S.C. § 1056(d)(3)(A). And under ERISA, "[e]ach pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order." *Id.*

ERISA defines a "qualified domestic relations order" as an order that "assigns to an alternate payee the right to … receive all or a portion of the benefits payable with respect to a participant under a plan." *Id.* § 1056(d)(3)(B)(i)(l). In turn, a "domestic relations order" is "any judgment, decree, or order" which "relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent" and is made pursuant to a "State or Tribal domestic relations law." *Id.* § 1056(d)(3)(B)(ii).

## C.     The Order is not a qualified domestic relations order under ERISA.

Whether Defendants wrongfully denied benefits hinges on whether the Order constitutes a valid qualified domestic relations order "made pursuant to State ... law." 29 U.S.C. § 1056(d)(3)(B)(ii)(II). Because the Order is "a separate judicially approved contract between [the plan participant and the non participating spouse] which the Plan administrator has no special

11

discretion to interpret," Defendants' determination regarding the Order's validity is a legal question reviewed *de novo*. *See Matassarin*, 174 F.3d at 563.

Like their denial letter, *see* Dkt. 12 at 19, Defendants' motion to dismiss relies on *In re Banigan*, 660 S.W.3d 307 (Tex. App.—Dallas 2023, orig. proceeding), to argue that the Order is void because the state court lacked subject matter jurisdiction to issue it. *Id.* at 14-15. In *Banigan*, a husband and wife entered into a partition agreement dividing their community property under section 4.102 of the Texas Family Code. 660 S.W.3d at 310. That same day, the husband filed a petition for declaratory judgment in a Texas district court, and that court issued a declaratory judgment holding that the partition agreement was enforceable, valid, and binding. *Id.* In a later divorce proceeding, the husband sought to enforce an arbitration clause in the partition agreement. *Id.* at 311. The wife argued that the declaratory judgment was void because there was no justiciable controversy when the court issued it. *Id.* at 312. But the court presiding over the divorce proceeding issued an order compelling arbitration, prompting the wife to seek mandamus relief. *See id.* at 311-12.

Agreeing with the wife, the appellate court held in *Banigan* that the declaratory judgment was void for lack of subject matter jurisdiction because there was no live controversy between the husband and wife when the judgment was sought. *Id.* at 313. As the court explained, the Uniform

Declaratory Judgments Act "does not give courts the power to rule on hypothetical situations or determine questions that are not essential to the decision of an actual controversy, even though the questions may require adjudication in the future." *Id.* Yet in that case, there was no indication that the parties had "either a pending cause of action" between them "or a clear indication of the extent of the parties' differences such that a court may presume one is imminent." *Id.* at 314. To the contrary, when responding to her husband's petition for declaratory relief, the wife "confirmed the facts set forth in the petition and consented to the entry of the orders declaring the validity of the partition agreement." *Id.* at 313. As a result, "the trial court lacked subject matter jurisdiction" to enter the order. *Id.*

Contrary to Cardona's assertions, *Banigan* is on all fours with this case. For instance, the record refutes Cardona's contention that his Order is not a declaratory judgment. Just like the spouses in *Banigan*, Cardona and his wife had entered into a partition agreement under Section 4.102 of the Texas Family Code. And just like what occurred in *Banigan*, Cardona and his wife sought a declaratory judgment that the agreement is enforceable, invoking Texas's version of the Uniform Declaratorys Judgment Act, Tex. Civ. Prac. & Rem. Code §§ 37.003-37.004, as a basis for jurisdiction. *See* Petition at 1. And the Order itself plainly constitutes a declaratory judgment because it purports to "create[]" and "recognize" Murillo's right to receive Cardona's Plan benefits

13

pursuant to the couple's partition agreement. *See Halliburton Energy Servs., Inc. v. Axis Techs., LLC*, 444 S.W.3d. 251, 262 (Tex. App.—Dallas 2014, no pet.) (explaining that a declaratory judgment "determines the rights of the parties").

Also just like *Banigan*, there was no live controversy when the petition was filed or when the Order was entered. As Cardona admits, "[b]oth spouses consented to the QDRO. There was no dispute or challenge." Dkt. 15 at 2. He and his wife were and have remained married, both before and after the Order was entered. Dkt. 12 at 13-17. Because there was no justiciable controversy, and as a matter of law, Defendants correctly concluded that the Order is void for lack of jurisdiction.

Defendants are also correct that neither Texas law nor ERISA provided the state court with an independent basis for jurisdiction to issue the Order. *See* Dkt. 14 at 15-16. At most, Texas law authorizes married spouses to *enter into* a partition agreement between themselves via a written agreement. *See* Tex. Fam. Code § 4.102. But it does not give a court subject matter jurisdiction "create" or "recognize" a partition agreement absent a live controversy. And nothing in ERISA specifies that a state court has jurisdiction to enter such a decree either.

At bottom, because Texas law confirms that the Order is void for lack of jurisdiction, the Order was not "made pursuant to state domestic relations law" and therefore does not satisfy ERISA's statutory definition of a qualified

14

domestic relations order. *See* 29 U.S.C. 1056(d)(3)(B)(ii)(II). So Cardona cannot show that Defendants violated the Plan by refusing to honor the Order.

**D.     Defendants are not bound to the Order's clause concerning continuing jurisdiction.**

The foregoing conclusion defeats Cardona's allegation that Defendants arbitrarily or capriciously "ignored" a "mandatory clause" in the Order that required Defendants to return to the issuing state court for clarification of its terms. Dkt. 12 at 6. Because the Order is void for lack of subject-matter jurisdiction, none of its terms are enforceable.

Moreover, the undersigned agrees with Defendants that the Order does not obligate the Plan to seek clarification from the state court when determining the Order's validity. *See* Dkt. 14 at 22-24, 26-27. The operative language states that "[i]f the Plan Administrator determines that this Order is not qualified," the issuing court retains jurisdiction "*over the parties* … to the extent necessary to render a domestic relations order that is qualified." Dkt. 12 at 17 (emphasis added). The Plan Administrator is not one of "the parties" referenced in the Order. Rather, the only "parties" to the Order were Cardona and his wife. The Order does not impose any duties on Defendants, generally, or the Plan in particular.

Cardona's reliance on 29 U.S.C. § 1056(d)(3)(H) is also inapt. That provision only requires a plan administrator to "separately account for the

15

amounts" that "would have been payable to the alternative payee" until it is resolved whether an order is in fact a qualified domestic relations order. 29 U.S.C. § 1056(d)(3)(H).  Nothing in that provision requires Defendants to ask the issuing state court whether the Order satisfies ERISA's requirements. Cardona's contrary theory should be rejected.

**E.    Defendants did not arbitrarily and capriciously refuse to honor Cardona's Order.**

As another theory, Cardona challenges Defendants' denial of benefits based on the Plan's past acceptance of "materially identical" orders, asserting that their changed position was arbitrary and capricious.  Dkt. 12 at 6. Defendants contend that Cardona's disparate treatment theory is flawed, including because it wrongly presupposes "that a plan can never course-correct for past errors in adjudication of claims."  Dkt. 14 at 18.

When reviewing an administrator's denial of benefits, courts generally scrutinize whether the administrator's interpretation of the plan is legally correct and, if the answer is no, whether the administrator's decision was an abuse of discretion.  *Gosselink v. American Tel. & Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).  During the first of those two steps, the court considers (1) whether the administrator has given the plan a uniform construction, (2) whether its  interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan.

*Wilbur v. ARCO Chem. Co.*, 974 F.2d 631, 637-68 (5th Cir. 1992) (citations omitted). Of those three considerations, the "most important factor" is whether the administrator's interpretation comports with a fair reading of the plan. *Gosselink*, 272 F.3d at 727.

Here, the Plan contains an anti-alienation provision, providing that "[e]xcept as otherwise provided with respect to 'qualified domestic relations orders'" pursuant to 29 U.S.C. § 1056(d), "no right[] or interest of any kind in any benefit shall be transferable or assignable by any Member or any beneficiary …." Dkt. 14-1 at 52, § 15.2. This language tracks ERISA's anti-alienation mandate. *See* 29 U.S.C. § 1056(d). And as concluded above, Texas authorities confirm that a state court lacks jurisdiction to issue a valid domestic relations order declaring that a couple's partition agreement is enforcement when there is no live controversy between the spouses. *See supra* Part I.C (discussing *In re Banigan*, 660 S.W.3d 307 (Tex. App.—Dallas 2023, orig. proceeding)). That state law prohibition means that the Order on which Cardona relies does not constitute a qualified domestic relations order under ERISA or the Plan.

Defendants have therefore correctly construed Section 15.2 to prohibit Cardona's request to enforce the Order and distribute Plan benefits to wife. Indeed, Defendants' enforcement of the Plan's anti-alienation provision in conformity with ERISA is not only consistent with a fair reading of the Plan

but compelled by federal law. *See* 29 U.S.C. § 1056(d) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.").

The Plan's prior approval of similar orders does not alter this conclusion. It is true that uniformity of interpretation is a relevant consideration. *See, e.g.*, *Pedersen*, 742 F. Supp. 3d at 752-53 (determination that plan administrator had changed how it interpreted a plan provision supported the conclusion that the administrator's interpretation was legally incorrect). But in this context, construing the Plan to allow enforcement of domestic relations orders entered without proper jurisdiction would violate ERISA's anti-alienation provision. The mere fact that Defendants mistakenly approved analogous orders until realizing that participants like Cardona were gaming the system does not foreclose them from enforcing the anti-alienation restriction now. There was no abuse of discretion here.

## II.    Cardona fails to state a breach of fiduciary duty claim.

For his second claim (Count II), Cardona alleges that Defendants breached their fiduciary duties by disregarding the terms of his Order, failing to consult with the issuing court, and denying Cardona's claim after allegedly approving 29 materially identical orders. Dkt. 12 at 5-6. Although his pleading invokes Section 404 of ERISA, which defines the "prudent man standard of care" applicable to fiduciaries, 29 U.S.C. § 1104, Cardona later clarified that

18

he seeks equitable relief for this claim under 29 U.S.C. § 1132(a)(3), *see* Dkt. 30 at 17.  Moving to dismiss that claim, Defendants assert they committed no breach of fiduciary duty because they acted properly when refusing to honor the Order.  *See* Dkt. 14 at 20-21.

Section 1132(a)(3) allows a participant to bring a civil action to "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan," and "to obtain other appropriate equitable relief … to redress such violations" or "to enforce … the terms of the plan."  29 U.S.C. § 1132(a)(3).  But as concluded above, Cardona has not plausibly alleged that Defendants violated ERISA or the Plan's terms in any respect.  As a result, his breach of fiduciary duty claim should be dismissed.

## III.   Cardona has not stated a claim that Defendants wrongfully failed to disclose documents.

As another claim (Count IV), Cardona alleges that Defendants failed to disclose Plan documents in violation of Sections 1024(b)(4) and 1132(c)(1)(B).  Dkt 12 at 7.  He asserts that, on January 24, 2025, he sent a formal written request to the Plan Administrator requesting "comparative documentation concerning the 29 previously approved QDROs, including any internal Plan rules, procedures, or guidelines used to evaluate those submissions."  *Id.*  Defendants argue that the January 24, 2025 letter included no request for documents, and that Cardona would not be entitled documents concerning

19

other participants anyway. Dkt. 14 at 25. Cardona responds that his request was "clear, specific, and made in good faith," thereby triggering Defendants' disclosure obligations. Dkt. 15 at 10.

Defendants are correct that Cardona's letter contains no request that the Plan Administrator provide him with documents. It only states: "I respectfully request that the plan provide a direct and substantive explanation for the discrepancy between the treatment of my QDRO and the 29 prior approvals." Dkt. 12 at 42. This cannot reasonably be read as a request that Cardona be provided with specific documents, much less those that address the Plan's approval of other participants' benefits requests.

Moreover, ERISA did not require Defendants to produce documents about those other approvals even if Cardona had sought them. The provision that Cardona cites requires the administrator to provide, upon written request, a copy of the latest updated summary plan description, annual report, any terminal report, the bargaining agreement, trust agreement, contract, or "other instruments under which the plan is established or operated." 29 U.S.C. § 1024(b)(4). The "catch-all provision" referencing "other instruments" is interpreted "narrowly so as to apply only to formal legal documents that govern a plan." *Murphy v. Verizon Comm'ns, Inc.*, 587 F. App'x 140, 144 (5th Cir. 2014). It does not encompass documents addressing other participants' claims. Accordingly, Count IV should be dismissed.

IV.    **The Court disregards new claims and new contentions in Cardona's latest brief.**

Months after the motion to dismiss was fully briefed, Cardona filed an opening brief regarding his claims for relief. *See* Dkt. 30. Much of the brief attempts to raise new claims that Cardona failed to raise in his amended complaint or makes new arguments about the administrative record. The Court declines to consider any of those claims and contentions at this stage.

First, Cardona cannot use his brief to raise new claims that he failed to properly plead, much less after the pending motion to dismiss was fully briefed. *Cf. Cutrera v. Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *iamond Beach Owners Assoc. v. Stuart Dean Co.*, 2018 WL 7291722, at *4 (S.D. Tex. Dec. 21, 2018) ("[I]t is wholly inappropriate to use a response to a motion to dismiss to essentially raise a new claim for the first time."), *adopted by* 2019 WL 245462 (S.D. Tex. Jan. 17, 2019). That principle forecloses Cardona's newfound theories that Defendants' denial letter violated 29 U.S.C. § 1133 by including inadequate information and that Defendants violated 29 U.S.C. § 1056(d)(3) by failing to promptly process the Order. *See* Dkt. 30 at 9-10.

Second, Cardona attempts to raise new arguments about the administrative record, *see* Dkt. 30 at 12-17, but those arguments have no

21

bearing on whether his pleading states a cognizable claim. "[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.,* 78 F.3d 1015, 1017 (5th Cir. 1996). Cardona cannot rely on items found elsewhere to avoid dismissal.

More fundamentally, complaints about alleged incompleteness of the administrative record do not alter the result. Defendants' letters—which Cardona attached to his own pleading—confirm that they told him that the Order lacked a "jurisdictional or legal basis" because there was no "bona fide domestic relations dispute," citing *In re Banigan*, 660 S.W.3d at 313. Dkt. 12 at 19 (October 1, 2024 letter); *id.* at 22 (January 7, 2025 letter); *id.* at 32 (March 10, 2025 final denial, incorporating prior letter). Defendants' final letter also explained why their refusal to honor the Order was not discriminatory, namely that "inadvertently process[ing] improper QDROs in the past based on vague, incomplete, or misleading information contained in those distribution submissions ... does not support improper processing of [Cardona's] claim or other claims." *Id.* at 34. Cardona cannot show that Defendants needed to provide anything more when explaining why his claim was denied. And because Defendants' position was correct as a matter of law, Cardona cannot obtain relief under any standard of review. His claims should be dismissed.

22

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendants' motion to dismiss (Dkt. 14) be **GRANTED**, and that Plaintiff Jesus Cardona's claims be **DISMISSED WITH PREJUDICE.**

The Clerk of Court is directed to send a copy of this opinion to Plaintiff, by email and regular mail, to his record addresses.

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).   Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on February 13, 2026, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

23

Filed for Record
10/6/2023 9:34 AM
Cassandra C. Tigner, District Clerk
Brazoria County, Texas
125217-F
Jasmine Negrete, Deputy

125217-F

NO. _____

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| | § | |
| JESUS CARDONA AND | § | _____ JUDICIAL DISTRICT |
| DAMARY CAROLINA TORRES MURILLO | § | |
| | § | |
| PETITIONERS | § | BRAZORIA COUNTY, TEXAS |

## ORIGINAL PETITION FOR DECLARATORY JUDGMENT

Jesus Cardona and Damary Carolina Torres Murillo, spouses, petition the Court for entry of a Qualified Domestic Relations Order declaring the right of Petitioner, Damary Carolina Torres Murillo, to receive the assignment of the retirement plan benefits held in the name of Petitioner, Jesus Cardona. Petitioners would show the Court the following:

### A.    Jurisdiction

1.    This Court has jurisdiction of the subject matter of this Petition under TEX. CIV. PRAC. & REM. CODE, §§37.003 –37.004; 26 U.S.C. §414(p)[1] and 29 U.S.C. §1056(d)[2].

### B.    Facts

2.    Petitioners are spouses. They reside in Harris County, Texas.

3.    Petitioner, Jesus Cardona, is an employee of Maritime Association in Pasadena, Texas. Petitioner, Jesus Cardona, is a participant in the Maritime Association - I.L.A. Retirement Plan (hereinafter, "the Plan") sponsored by Maritime Association of Houston, Texas.

4.    The retirement benefits payable to Petitioner, Jesus Cardona, under the Plan (the "Plan Benefits") are Petitioners' community property.

5.    The Administrator of the Plan is Maritime Association.

---

[1] Internal Revenue Code of 1986 (as amended)

[2] Employee Retirement Income Security Act of 1974 (as amended)

Appendix A

Copy from re:SearchTX

6.      On October 5, 2023, Petitioners executed a written Partition of Community Property Agreement under the authority of Section 4.102 of the Texas Family Code in which they partitioned 100% of the Plan Benefits to Petitioner, Damary Carolina Torres Murillo, as Damary Carolina Torres Murillo's sole and separate property. A copy of the Partition Agreement is attached hereto as **Exhibit A**.

### C.      Partition is Ineffective in the Absence of a QDRO

7.      The Plan is regulated by the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which prohibits the transfer or assignment of benefits held in employer retirement plans except by issuance of a qualified domestic relations order ("QDRO"). [3, 4]

### D.      Statutory Authority for Entry of QDRO

8.      ERISA grants state courts the authority to assign retirement plan benefits by entry of a QDRO.  A QDRO is an order that is made pursuant to a state community property law relating to the provision of marital property rights for the benefit of a spouse of a participant [5] and that assigns to such spouse the right to receive all or a portion of the benefits payable to the participant.[6] A QDRO can be entered as a stand–alone order in the absence of a divorce proceeding.[7]

### E.      Prayer

Accordingly, Petitioners, Jesus Cardona and Damary Carolina Torres Murillo, pray that this Court enter a Qualified Domestic Relations Order recognizing that Petitioners have entered into a binding and enforceable partition of community property in accordance with the Texas Family Code and recognizing the right of Petitioner, Damary Carolina Torres Murillo, to receive

---

[3] 29 U.S.C. §514(a).

[4] 29 U.S.C. §1056(d)(1).

[5] 29 U.S.C. §1056(d)(3)(B)(ii); §§1144(a) and 1144(b)(7); 26 U.S.C. §414(p)(1)(B).

[6] 29 U.S.C. §1056(d)(3)(b)(i)(I)

[7] https://www.dol.gov/ebsa/faqs/faq_qdro.html; ERISA § 206(d)(3)(B); IRC § 414(p)(1); Advisory Opinion 90-46A

ORIGINAL PETITION FOR DECLARATORY JUDGMENT                                    Page 2

Copy from re:SearchTX

the assignment of 100% the Plan Benefits held in the name of Petitioner, Jesus Cardona, in the

Maritime Association - I.L.A. Retirement Plan.

Respectfully submitted,

_____
Henry J. Novak
11782 Jollyville Road, Suite 210
Austin, Texas 78759
henry@henrynovak.com
(512) 765-5450
(512) 577–5380 (cell)
(512) 532–6008 (Fax)
Attorney for Petitioners
State Bar No. 15120000

Copy from re:SearchTX

# EXHIBIT A

Copy from re:SearchTX

## Partition of Community Property
(Texas Family Code, Section 4.102)

The parties to this Partition and Exchange Agreement are Jesus Cardona ("Jesus") and Damary Carolina Torres Murillo ("Damary"), of Harris County, Texas.

### Stipulations

1.      The Parties are entering into this agreement in accordance with article XVI, section 15, of the Texas Constitution, as amended, and relevant sections of the Texas Family Code, as amended. Section 3.001 of the Texas Family Code defines a spouse's separate property as the property owned or claimed by the spouse before marriage; the property acquired by the spouse during marriage by gift, devise, or descent; and the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage. Section 3.002 of the Texas Family Code defines community property as the property, other than separate property, acquired by either spouse during marriage. Texas law provides that income from separate property during the marriage is community property. A partition and exchange agreement makes what would otherwise be community property instead be separate property.

2.      The parties acknowledge and agree that they are making and entering into this agreement voluntarily for the purposes of providing for the financial and economic security of their marriage.

3.      The parties own as community property the benefits held in a retirement plan sponsored by Jesus's employer, Maritime Association and held in Jesus's name, only ("Plan Benefits"). The parties intend by this agreement to partition the Plan Benefits between themselves so that following the execution of this agreement, the parties will hold and possess the Plan Benefits as sole separate property as hereinafter provided.

Therefore, in consideration of the mutual promises and agreements contained in this Agreement, and in consideration of the parties' desire to effectuate the intentions as hereinabove set forth, the parties covenant, agree, and contract as follows:

### Article 1
### Statement of Facts

1.1     Community Property of Parties

Jesus and Damary own as community property the Plan Benefits presently held in Jesus's Name in the Maritime Association - I.L.A. Retirement Plan sponsored by Jesus's employer, Maritime Association of Houston, Texas and more fully described in Exhibit A to this Agreement.

JC
_____
Plan Holder's Initials

DT
_____
Spouse's Initials

Copy from re:SearchTX

1.2    Partition Exclusive as to Article 1.1 Property

This Partition Agreement is exclusive as to the community property identified in Article 1.1. No other community property of the Parties is being partitioned under this Agreement and prior to entering into this Agreement no other community property has been partitioned by the Parties. Jesus represents and warrants to Damary that full and complete disclosure of the nature and extent of the value of benefits held in Jesus's name under the Maritime Association - I.L.A. Retirement Plan had been made, including the information set forth in Exhibit A attached to this agreement.

## Article 2
## Partition of Property

2.1    Property Partitioned to Damary

The Parties agree that Damary will own, possess, and enjoy as Damary's sole and separate estate, free from any claim of Jesus, one hundred percent (100%) of the Plan Benefits as of the date of this Agreement (hereinafter, "Damary's Separate Plan Benefits").

Jesus hereby partitions to Damary all of Jesus's community-property interest, in and to Damary's Separate Plan Benefits.

Jesus grants and confirms to Damary, and to Damary's heirs or successors, that Jesus hereby assigns and releases all right, title, and interest in and to any claims to Damary's Separate Plan Benefits, to have and to hold the same forever.

2.2    Future Plan Benefits

The Parties agree that the remaining balance of the Plan and all future contributions made to it from and after the date of this agreement shall continue to be community property.

## Article 3
## Income or Property Derived from Separate Property

3.1    Income from Damary's Separate Property

Jesus agrees that following execution of this Agreement (a) all income, changes, mutations, and increases in kind or in value of Damary's Separate Plan Benefits; (b) all property acquired by the reinvestment of income from Damary's Separate Plan Benefits; and (c) all earnings and income arising from Damary's Separate Plan Benefits will be Damary's separate property, unless the parties agree in writing to the contrary.

3.2    Waiver of Claims

Jesus acknowledges and agrees that Damary's Separate Property will be free from all claims of Jesus that may have accrued before the date of this agreement, as well as all claims that

PARTITION AGREEMENT

*JC*

Plan Holder's Initials

Page 2

*DT*

Spouse's Initials

Copy from re:SearchTX

may arise following the execution of this agreement. Any money used for the benefit of Jesus will be presumed to be a gift to Jesus, as contrasted with a payment for which reimbursement or repayment is later expected, unless the parties agree otherwise in writing. This waiver applies during the lifetime of both parties, as well as on the death of either or both parties. This waiver extends to any rights, whether choate or inchoate, that may arise under the laws of Texas or any other jurisdiction. Jesus further agrees that by signing this agreement to be estopped from making any claim of any kind at any time to Damary's separate property or Damary's separate estate, except as may expressly be provided for in this agreement.

## Article 4
## Management of Properties

4.1    Management of Properties

Each party has the full, free, and unrestricted right to manage the separate property over which they have control under section 3.101 of the Texas Family Code or succeeding provisions of similar import and nature, including without limitation the right to convey or encumber the property; to dispose of it by sale, gift, or otherwise; and to deal with it without taking into consideration any rights or interests of the other party. If the joinder of Jesus or Damary ("Joining Party") should be required by law in connection with the execution of any document by the other party with respect to the separate property of the other party, on request and from time to time, the Joining Party must execute all such documents necessary to affect the desires of the other party, but without any personal liability of the Joining Party.

## Article 5
## Undisclosed Property

5.1    Remaining Community Property

All community property not listed in Article 2 and in Exhibit A continues to be owned by the parties as equal cotenants with right of survivorship.

## Article 6
## Other Provisions

6.1    Entire Agreement

Each party has carefully read this agreement, including all schedules attached to it and other documents to which it refers, and has executed it in reliance on the party's own judgment. This agreement expresses the entire agreement between the parties concerning the Plan Benefits.

6.2    Incorporation of Exhibit

Exhibit A referred to in this Agreement is incorporated into this Agreement as completely as if they were copied verbatim in the body of it.

PARTITION AGREEMENT                                                                     Page 3

JC
_____
Plan Holder's Initials

DT
_____
Spouse's Initials

Copy from re:SearchTX

6.3    Partial Invalidity

If any provision of this agreement is for any reason found to be unenforceable, all other provisions nonetheless remain enforceable.

6.4    Enforceability

This agreement may be enforced by suit in law or equity by either of the parties or by their heirs, executors, attorneys, or assigns. Each party agrees that, by signing this agreement and accepting any benefit whatsoever under it, they are estopped and barred from making any claim of any kind at any time to any separate property or the separate estate of the other party or to any property described in this agreement as being the separate property of the other party. Each party waives their right to make claims to any separate property of the other party or to any property designated as belonging to the separate estate of the other party, whether the property is acquired before or after this agreement is signed.

6.5    Successors

This agreement binds and inures to the benefit of the parties and their respective legatees, devisees, heirs, executors, legal and personal representatives, assigns, transferees, and successors in interest.

6.6    Amendment or Modification

This agreement may be waived, abandoned, modified, amended, discharged, or terminated only by a written instrument signed by both parties that specifically identifies the waiver, abandonment, modification, amendment, discharge, or termination.

6.7    Effective Date

This agreement takes effect when it is executed by both parties and will remain in effect even when the parties' marriage is dissolved by death or otherwise.

6.8    Execution of Documents

Each party agrees to cooperate fully with the other in performing all acts and in executing, acknowledging, and delivering all instruments and documents required to accomplish the intent of this agreement, including but not limited to deeds, assignments, and promissory notes. Each party agrees to execute all documents required to accomplish the intent of this agreement within fourteen days after the documents are presented to the party for execution.

6.9    Attorney's Fees and Expenses for Enforcement

If either party defaults in performing any obligation under this agreement so that the other party is required to engage the services of an attorney for enforcement or relief, or if either party

PARTITION AGREEMENT                                                                                                      Page 4

_JC_____                                      _DT_____

Plan Holder's Initials                                                                Spouse's Initials

Copy from re:SearchTX

brings an action or other proceeding to enforce this agreement or to enforce any judgment, decree, or order made by a court in connection with this agreement, the defaulting party must pay all reasonable attorney's fees, expert's fees, and other costs of the other party.

6.10   Waiver of Breach or Term

The waiver of any breach of any provision of this agreement does not waive any other breach of that or any other provision. Waiver of any term of this agreement may be accomplished only concerning future performance and only by a written instrument signed by both parties expressly stating the provisions waived.

6.11   Titles and Captions

Article headings, titles, and captions contained in this agreement are merely for reference and do not define, limit, extend, or describe the scope of this agreement or any provision.

6.12   Representation

The attorney representing the parties is Henry J. Novak, 11782 Jollyville Road, Suite 210, Austin, Texas 78759. Both parties have received legal advice from Mr. Novak in connection with this Partition Agreement and Mr. Novak has advised both parties of the advisability of their retaining independent counsel to represent each of them in connection with this agreement.

Jesus acknowledges the opportunity to retain independent counsel to represent Jesus in connection with this agreement and that Jesus has been encouraged by Damary and others to obtain an attorney of Jesus's choice to represent Jesus, but that Jesus has specifically declined to do so and is relying on personal judgment in entering into this agreement. Notwithstanding the fact that Jesus has been self-represented in this matter, Jesus reaffirms the warranties made in this agreement and further represents and warrants that Jesus has the requisite knowledge, skill, and training to fully understand the consequences of the execution of this agreement.

Damary acknowledges the opportunity to retain independent counsel to represent Damary in connection with this agreement and that Damary has been encouraged by Jesus and others to obtain an attorney of Damary's choice to represent Damary, but that Damary has specifically declined to do so and is relying on personal judgment in entering into this agreement. Notwithstanding the fact that Damary has self-represented in this matter, Damary reaffirms the warranties made in this agreement and further represents and warrants that Damary has the requisite knowledge, skill, and training to fully understand the consequences of the execution of this agreement.

6.13   Place of Performance and Governing Law

All rights, duties, and obligations under this agreement are payable and enforceable in Harris County, Texas. This agreement must be construed, and its performance enforced, under Texas law.

PARTITION AGREEMENT

JC

Plan Holder's Initials

Page 5

DT

Spouse's Initials

Copy from re:SearchTX

6.14.    Waiver of Disclosure of Financial Information.

This agreement is signed after execution of a Waiver of Disclosure of Financial Information a copy of which is attached hereto as Exhibit B.

## Article 7
## Representations and Warranties

### WARNING

Each party to this agreement understands that by signing this document they are permanently surrendering rights and claims they would otherwise have under Texas law and under the law of other jurisdictions.

7.1    Representations and Warranties of Jesus Cardona

My name is Jesus Cardona. I represent and warrant that:

a.    I have carefully read each page of this agreement and Exhibit A in their entirety.

b.    I am fully and completely informed by my attorney about the law relating to the subject matter of this agreement and about the spousal rights and liabilities of both parties.

c.    I am entering into this agreement voluntarily.

d.    I have given careful and mature thought to the making of this agreement.

e.    I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect. I further acknowledge that this agreement was not procured by fraud, duress, or overreaching.

f.    I am not relying on any fiduciary obligations owed by one party to the other or on any duty of disclosure founded on a confidential or other relationship between the parties. Furthermore, I am not relying on any legal or accounting advice or representation of fact or law provided by Damary or anyone acting on Damary's behalf.

g.    I fully understand that by signing this agreement I will be legally prevented from making any claim of any kind at any time, including a divorce proceeding, to the separate property of Damary herein provided for.

h.    I fully understand that by executing this agreement I may be adversely affecting my inheritance rights and property and that I am permanently surrendering rights to income and property I would otherwise have under Texas law.

PARTITION AGREEMENT                                                                                   Page 6

JC
_____                                                    _____
Plan Holder's Initials                                                              Spouse's Initials

Copy from re:SearchTX

i.     I am executing this agreement with intent to be bound fully by all its terms.

_____
Jesus Cardona

7.2    **Representations and Warranties of Damary Carolina Torres Murillo**

My name is Damary Carolina Torres Murillo. I represent and warrant that:

a.     I have carefully read each page of this agreement and Exhibit A in their entirety.

b.     I am fully and completely informed by my attorney about the law relating to the subject matter of this agreement and about the spousal rights and liabilities of both parties.

c.     I am entering into this agreement voluntarily.

d.     I have given careful and mature thought to the making of this agreement.

e.     I fully and completely understand each provision of this agreement, concerning both the subject matter and the legal effect. I further acknowledge that this agreement was not procured by fraud, duress, or overreaching.

f.     I am not relying on any fiduciary obligations owed by one party to the other or on any duty of disclosure founded on a confidential or other relationship between the parties. Furthermore, I am not relying on any legal or accounting advice or representation of fact or law provided by Jesus or anyone acting on Jesus's behalf.

g.     I am executing this agreement with intent to be bound fully by all its terms.

_____
Damary Carolina Torres Murillo

PARTITION AGREEMENT

_____
Plan Holder's Initials

Page 7

_____
Spouse's Initials

Copy from re:SearchTX

EXECUTED on the dates shown below.

STATE OF TEXAS                                    §
                                                 §
                                                 §
COUNTY OF _Harris_                               §

    This instrument was acknowledged before me on _October 5_ , 2023, by
Jesus Cardona.



_____
Notary Public, State of Texas

STATE OF TEXAS                                    §
                                                 §
COUNTY OF _Harris_                               §

    This instrument was acknowledged before me on _October 5_ , 2023, by
Damary Carolina Torres Murillo.

_____
Notary Public, State of Texas

*Exhibit "A" follows*

PARTITION AGREEMENT

_JC_
Plan Holder's Initials

Page 8

_DT_
Spouse's Initials

Copy from re:SearchTX

EXHIBIT A

(Name, sponsor, and plan administrator of Retirement Plan,
and Jesus Cardona's benefits under the Plan, as of the date of the Partition Agreement)

Plan Name:                          Maritime Association - I.L.A. Retirement Plan

Plan Sponsor:                       Maritime Association
                                    11550 Fuqua Street, Suite 425
                                    Houston, Texas 77034
                                    281-484-4343

QDRO Administrator:                 Carolyn Wallace
                                    Maritime Association
                                    11550 Fuqua Street, Suite 425
                                    Houston, Texas 77034
                                    281-484-4343

PARTITION AGREEMENT                                                    Page 9

      ᒐC                                           D T
Plan Holder's Initials                      Spouse's Initials

Copy from re:SearchTX

## EXHIBIT B

## Waiver of Disclosure of Financial Information

This Waiver of Disclosure of Financial Information is made by Jesus Cardona and Damary Carolina Torres Murillo (the "Parties"). The parties are now married and are executing this waiver in accordance with the provisions of section 4.105 of the Texas Family Code in connection with a Partition or Exchange Agreement between them of even date herewith.

1.      *Waiver of Disclosure by* Jesus Cardona

I, Jesus Cardona acknowledge receiving a copy of the proposed partition or exchange agreement. I have read it and fully understand it. I have been provided a fair and reasonable disclosure of the property and financial obligations of Damary Carolina Torres Murillo. I voluntarily waive any further disclosures regarding the property, including its value, and the financial obligations of Damary Carolina Torres Murillo beyond the disclosures provided in the proposed partition or exchange agreement. I acknowledge that I have been offered an opportunity to further investigate the property, including its value, and the financial obligations of Damary Carolina Torres Murillo. However, I waive the opportunity for further investigation.

2.      *Waiver of Disclosure by* Damary Carolina Torres Murillo

I, Damary Carolina Torres Murillo acknowledge receiving a copy of the proposed partition or exchange agreement. I have read it and fully understand it. I have been provided a fair and reasonable disclosure of the property and financial obligations of Jesus Cardona. I voluntarily waive any further disclosures regarding the property, including its value, and the financial obligations of Jesus Cardona beyond the disclosures provided in the proposed partition or exchange agreement. I acknowledge that I have been offered an opportunity to further investigate the property, including its value, and the financial obligations of Jesus Cardona. However, I waive the opportunity for further investigation.

3.      *Execution*

The parties acknowledge executing this Waiver of Disclosure of Financial Information in multiple originals on the dates and at the times of the acknowledgments. The parties further acknowledge signing this Waiver of Disclosure of Financial Information before the execution of the partition or exchange agreement.

Executed on ___October 05___, 2023.

_____
Jesus Cardona

_____
Damary Carolina Torres Murillo

Copy from re:SearchTX

STATE OF TEXAS                              §
                                           §
COUNTY OF _____Harris_____                  §

    This instrument was acknowledged before me on ___October 5___, 2023 by
Jesus Cardona.

_____
Notary Public, State of Texas


STATE OF TEXAS                              §
                                           §
COUNTY OF _____Harris_____                  §

    This instrument was acknowledged before me on ___October 5___, 2023 by
Damary Carolina Torres Murillo.

_____
Notary Public, State of Texas

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Dinah LaFrey on behalf of Henry Novak
Bar No. 15120000
dinah@henrynovak.com
Envelope ID: 80321486
Filing Code Description: Original Petition (OCA)
Filing Description: Original Petition for Declaratory Judgment
Status as of 10/6/2023 9:46 AM CST

Associated Case Party: Jesus Cardona

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Dinah HaneyLaFrey | | dinah@henrynovak.com | 10/6/2023 9:34:45 AM | SENT |

Copy from re:SearchTX